Thank you, Your Honor. May it please the court, my name is Mario Valenzuela, with the Advocates Law Firm, Pro Bono Counsel for Appellant Maria Luna. With the court's permission, may I have three minutes for rebuttal? Yes. Yeah. I first want to start with my fundamental argument for this case is that the district court would have been correct in this decision had there not been any material facts disputed. But in this case, there was material facts disputed in the case. Therefore, the appellee did not meet its burden under FRC P56. There was ample disputes. One of the first disputes I want to raise to the court was there was no need for a special master, nor did any of the policies of the special master play any role in this case. That was raised in summary judgment, indicating that the special master would prohibit a transfer to another facility for her reasonable accommodations. That was not the case here. There was no such restriction. Also, the special master guidelines provide that if the individual has a disorder, the inmate in this case, that should be treated first. There was no record at all that the clinician actually made a diagnosis. And in fact, the special mass, I mean, in fact, the clinician's notes were just a compilation of other notes. There was no actual, I guess, analysis for this particular incident that happened on February 18th. Well, do any of these disputed issues you're referencing, do they bear on the question of whether or not the ensuing conduct after the initial incident and the response to the incident, whether the ensuing conduct, meaning the three stalking incidents, whether those rose to the level of creating a hostile work environment for which the defendant would be responsible? I believe it does, Your Honor. And I'm going to continue on if I may. They do raise that. And I'll just to answer the court's question. Yes, because the action that was taken at this time for the first incident, an exposure incident was basically to stop the action, which was appropriate. And they put a 90-day series of punishments for the inmate here. But none of that stopped him from being. Well, but no such incident ever occurred again. Is that correct? No similar incident occurred. Other incidents occurred, the stalking and. Correct. But they're of a much lesser magnitude. That is correct. OK, but you got to keep in mind that this individual had seven prior incidents that included masturbation, ejaculation, all these kind of hostilities that were that existed. Some of those incidents were quite dated. They were quite dated, but it doesn't diminish the danger or the hostility that this incident of February took place. She's in a room at the end of a hallway with no guards near her. Fourteen inmates with her. It is not that the case like the case in Morris, where there was guards at the door right there to help her. This is completely different. But I just like to continue on with the other distinctions. They the they apply to twenty twenty one policy here in this incident happened in twenty eighteen. The January twenty twenty one inmate sexual misconduct reduction plan was applied for both reasons. The Pally indicates that they followed the process. They followed the procedures in my motion to accept the late filing. I attached a twenty seventeen misconduct plan that allowed for the inmate to be sent to a different facility. It's not part of the record, but I only bring it up to illustrate just like that's not part of the record. So, too, should the January twenty twenty one policy not be part of this record? And that in itself makes it a material dispute that the court should have never considered. You can't have both ways. The temporary separation of the inmate was corrected. The initial conduct that Pally raised in their briefs that she agreed that the process is correct. Yes, she agreed the process is correct on February nine, twenty eighteen. But that's not the entire process. That's just the one day of the incident. Captain Mowgli, which was their designee captain, indicated that he found not her words, his words found the lack of such brand unreasonable. This is a CDCR employee indicating this. So it's hard to suggest that there was no material dispute here. There was material disputes. There was no evidence that the special master would prohibit a transfer. In fact, Captain Mowgli again says that they should have reviewed or should have reviewed the classification scale of the inmate and determine whether he could be located to another facility. They never even took those steps to investigate or see if there was reasonable accommodations that could be made. They just applied a twenty twenty one policy that did not apply and did nothing. So I think just these points point to the fact that there were material disputes. So let's go on to the hostile work environment. Was there a hostile work environment? I think the question is, was this incident pervasive enough? My argument to the court is it was. You have to look at it on the totality of circumstances. The lens of summary judgment shouldn't, especially a lens with was muddied with material disputes, shouldn't have been the lens to review this case. She should have had her pervial being court and the totality of circumstances should have been looked at so that the court could truly assess whether witnesses or other information would have came forth to allow the court to determine whether there's this was this event was pervasive enough by itself. But coupled with other events, I think it was pervasive. This person was allowed to roam freely in the Owing with the guard still at a very far distance. He a doctor a couple of times. He snuck in the room and frightened her to the point where he did not listen. Initially, she had to raise his voice and compose herself, and then she ran out scared. So that should be viewed in the totality of circumstances. Was that enough? I think that that should have been left to trial fact at a trial, not at summary judgment in light of the material disputes in this case. Counsel is the standard is the question whether the defendant did whether their response to the incident reasonable, or is it whether they could have whether they could have done more. I don't think it was reasonable, and they didn't do certainly didn't do what they were supposed to do because they applied a policy that didn't apply. They gave the district court disingenuous information about what a special master indicate should be the proper procedure and that wasn't the case here. So I don't think I mean, there's no record of any kind of combination offered. There's no record that they even considered relocating individual investigating where he is. Assessment level was, you know, sufficient that he wouldn't be a danger elsewhere. They just didn't do anything. I mean, I guess to follow on with some question. What is the legal authority that you have to indicate that they needed to provide some sort of accommodation as opposed to taking the disciplinary action and other steps that they took? Well, the legal authority is they have to take accommodations to prevent the future hostility from continuing. So can you be specific about that? Is there a case specifically that you're relying on to say that an accommodation was essential here? And go to my answer, your honor. Well, the free tag errors case, I think, talks about that one incident could cause discriminated change in terms of conditions. So, in other words, one event could generate a hostile environment. So if they would have took steps to prevent that hostile environment, they would satisfy the free tag in this case. I guess to put a finer point on it, they did discipline the inmate. They did impose various restrictions on the inmate. And it seems to be your argument that all the things that the defendants did do was not enough to make it reasonable. And it seems to me your argument that only a transfer of the inmate would have been a reasonable response. So what is their best authority or case for that assertion? Free tag, I think, is the case, your honor. And I think that it was worded that it was just her expectation that he should be removed. You know what I'm saying? We can't even review the question whether her expectations were within the law or reasonable because they never were asked. They were never investigated. And you're going to have rules. You've got to follow those rules, at least to the fullest extent of the law, to ensure that this individual, the employee, their rights are protected as well. There was a process for it. It wasn't followed. And I think doing nothing doesn't justify her being subjected to continued harassment in a hostile environment. I think that's the problem there. I mean, I'm looking at the free tag case and the language that it talks about in terms of liability for third-party actions is where the defendant ratifies or acquiesces in misconduct it knows about. So, clearly, there's knowledge here. And the question is whether the record here shows that it ratified or acquiesced in that. And so the assertion that the defendants did nothing is not correct, right, because the record clearly shows they took responsive action immediately. Well, they did. I don't want to opinion that they did take no action, but the action they took was temporary. They didn't take any action that would end the hostility or make it permanent. Basically, analogy, somebody got injured. They gave them first aid, and that's it. They didn't resolve the overall problem. And this person was still free to roam in a facility with no control whatsoever. So they didn't eliminate the problem. And one way to eliminate the problem was the potential to transfer him or take another reasonable accommodation. None of that was ever offered or discussed, and there's no record of it, at least. And I think I might have mentioned this, but I think with the material disputes here, the court should have taken this case to trial and let additional testimony and witnesses be presented so the court could take a better assessment of the facts in this case. I understand the court was also the bench court, but more information would have come out. It's muddied with material disputes right now, and they shouldn't have gone forward. With that in mind, I will speak on my rebuttal. Thank you. All right. Thank you, Counsel. We'll hear now from Mr. Call. You're muted. Thank you, Judge Collins. Thank you, Mr. Court. My name is Greg Call. I'm from the California Department of Justice, representing the California Department of Corrections and Rehabilitation. Let me start first by addressing Mr. Valenzuela's first points about a claim disputed issue of fact. He identifies three issues that were in movements, papers, or were mentioned in the district judge's opinion. But none of those three issues, the special master, whether the clinician made a diagnosis, and this reference to the 2021 reduction plan, none of those were part of the district court's decision. In other words, the district court's decision didn't turn on any of those things. They're not material facts in the case. They're arguments of counsel, references to documents. These aren't the material facts. The material facts are undisputed. What happened to appellant and what actions CDCR took in response to what happened to appellant, those are undisputed. And those are – this court shouldn't be distracted by this claim of disputed facts when the facts are not in dispute. This is a hostile work environment case based on a single incident of indecent exposure by an inmate patient at the California medical facility in Vacaville. Appellant's a nurse who's worked in the department for 14 years, and this was the only exposure incident she experienced. The district court correctly granted summary judgment for two key reasons. First, the undisputed material facts established that appellant was not subjected to a severe or pervasive harassing conduct that would constitute a hostile work environment. And second, the undisputed facts established that once the department learned of this inmate patient's illegal conduct, the department followed the applicable policies and regulations to prompt appropriate and effective measures. On the first point, appellant cannot show a hostile work environment because the facts established that she was never subjected to pervasive harassing conduct. As I mentioned, this was her only incident of exposure. And as this court has held, when a claim is based on a single incident, the severity requirement is heightened. Here, the single incident, even combined with the subsequent encounters six, seven, eight months later, were not enough to establish a severe and pervasively abusive work environment. On the second point, and more critically, the department cannot be – So, I mean, there may be ones that, you know, the prison cannot be tagged for, but I'm not sure just if the conduct considered by itself wouldn't necessarily rise to the standard. I mean, if this had been, you know, a supervisor or a co-worker who had done this, and then you're required to continue to work with that person afterwards, even after they're given some temporary discipline, that might be a very different case. Don't you agree? I do think that's right. I think you've got to look at the totality of the circumstances here. If this was a supervisor, we have cases where a supervisor did one extreme action, and that was enough, right? But here, where we do have one extreme action, admittedly, and then we have some follow-up contact, but this is in a prison setting. This is a provider of psychiatric services who was victimized. This is a person who is not a supervisor, but is someone that's actually, to some extent, under the control of the appellant, right? She can direct his conduct. So, if she has an alarm on her at all times, she can call guards to her assistance. So, you have to consider all the circumstances. It seems pretty clear under FRITAG that the prison can't be considered liable for the initial incident, that there's just no awareness that he's going to suddenly do this. But the prison decides whether or not she's going to continue to have contact with someone who did something like that to her. And that's what I understand the nature of her claim to be, that you can't unring this bell. This is what he did to me, and then you're continuing to make me have to deal with him. So, that's the issue as I see it. That's right, and that's why I think the more critical issue is whether the department acquiesced or ratified the conduct, as Judge Forrest mentioned, or whether it instead took adequate, reasonable, and sufficient measures to adjust the conduct. The FRITAG case is an important case. It led to changes. The department has operations manuals that have very strict rules on how to treat this exact offense in decent exposure. They've been approved by federal courts and other decisions, and it's a balancing act. The procedures, the policies in place are a balancing act that balance the employee's right to be free from an abusive atmosphere with the prisoner's rights to receive mental health treatment, with their due process rights, and with other rights that the courts have said that prisoners do not forfeit when they come into state custody. Here, the undisputed evidence shows that the department responded promptly and in accordance with these regulations and with its own policies. So, here's what the department did, just so we're all clear, and none of these are in dispute. Directly after the incident, the department immediately placed the inmate patient in administrative segregation. In response to appellant-specific requests, the inmate was barred from taking classes from appellant. The inmate was subject to an examination where a clinician recommended appropriate sanctions and protections consistent with the applicable policies and regulations. The department held a disciplinary hearing, which resulted in a guilty finding. The department imposed the maximum penalties under the policies and regulations, including a loss of 90 days, good behavior credits, essentially lengthening the patient's sentence by three months. He lost phone privileges, package privileges, canteen privileges, appliance privileges for 90 days. In effect, for three months, the inmate essentially lost much of his ability to have any contact with the outside world. Hansel, on the restriction for him not being in her classes anymore, was that a temporary measure or was that an ongoing measure? Based on what we have in the record, that was an ongoing measure. He never was in her classes again. He had that contact with her outside her classroom because he was in that building getting medical treatment. But he was never in her classes again, and that's what she had requested. And based on the record that we have, that was still in effect. Were any measures taken in response to the three stalking incidents? We don't have any indication on the record. We have an indication on the record that there was a 128B filed by plaintiff, but that's not a form where she made a record of these incidents. But that's not a form that rises up so that the prison can take action in response to it. So there was no rule. None of these violated any rules. There was no intervention needed from the prison from these three incidents. I understand they were uncomfortable and it was unfortunate, but they were just the consequence of the fact that where this inmate was receiving medical care was in the same building and she had a hallway with the classrooms where appellant was teaching other inmate patients. Is there a procedure in this facility that would be something like a no contact order or something like that where having that kind of interaction or contact would trigger some sort of violation? I don't think there's it's not clear in the record that that was an option. The DOM sets out the security precautions that are permitted and sets out the disciplinary actions that are permitted. And a no contact order was not indicated by the department operations manual, nor was it suggested or recommended by the examining clinician who gave recommendations on the disciplinary measures that should be taken. The inmate was also required to wear an exposure control jumpsuit for three months. He had screens placed on his cell. Obviously, the incident didn't happen in his cell. It happened elsewhere, but still there is a deterrent measure in applying these punishments to those that commit this violation. And of course, the department also referred the matter to the district attorney for a criminal prosecution, although the district attorney ultimately opted not to not to prosecute. These actions were not only wrong. I just wanted to follow up on Judge Forrest's question. Is there any indication in the record that the plaintiff ever requested a no contact order as an alternative to transferring the inmate? I don't believe so. No, nothing. Not in what I've seen. The specific request that she made when she reported this incident was that he not be in her classes anymore. These actions were not only prompt and reasonable, they were consistent with the applicable policies and regulations. They were also effective in that appellant did not have another indecent exposure incident with this inmate or with any other inmate during her time there. While appellant did have these three subsequent encounters with the offending inmate, none of these involved sexually harassing conduct. There was no physical conduct. There were no offensive or derogatory or sexual comments. There were two brief visual interactions and one brief verbal interaction. None of them were rule violations. They were, as I mentioned, they were a result of the fact of the proximity of the classrooms with the medical treatment rooms. Under the undisputed facts, the defendant cannot be liable because it acted promptly, reasonably, and effectively in responding to this exposure incident. If your honors don't have any other further questions, I'll rest with that. All right, it appears not. Then we'll hear rebuttal from Mr. Valenzuela. Thank you, your honor. I just want to point out that there was prompt response to the initial incident, but there was not a resolution. The appellant sought to have this individual no longer in her classroom. Captain Moakley, I think, speaks best for this case. He indicated that he found the lack of such ban unreasonable, a ban of not having this inmate in her classroom. That's a 2 ER 275 in the record. So it's it's that doesn't match up with what was represented to the court today. There was no measures and there was plenty of reporting for the subsequent incidents. There was no investigation. Well, you're not contending that he later was in the classroom, was it? He was. He snuck into the class. Yes, but I mean, he he was not, you know, assigned to go to the class. It was not assigned, your honor. That's correct. But he did sneak. He has a free ability of Rome that owing. And that's where the stocking and also that when he stuck into the classroom. So to have a ban, a permanent ban was not unreasonable. And it was never explored. And it should have been explored in this case. And I just leave the court with, you know, you have an individual here that five four with a 200 pound inmate, a leader of radical group. This is a dangerous person. And you have officers at the entry of the Owing. You have to take all necessary steps to protect employees. That wasn't the case here. And as a matter of public policy, when you have this kind of rules that allow for somebody to be transferred, they should be explored. They should be explored to ensure the safety of employees is top priority. With that, I submit. I thank the court. All right. Thank you, counsel. The case just argued will be submitted. And that concludes our session for today. All right. Hear ye, hear ye. All persons having had business with the Honorable United States Court of Appeals for the Ninth Circuit will now depart for this court for this session. Now stands adjourned.
judges: COLLINS, FORREST, SUNG